Joseph G. Pia (9945) (joe.pia@piahoyt.com)
John P. Mertens (14522) (jmertens@piahoyt.com)
Scott R. Hoyt (14558) (shoyt@piahoyt.com)
Ciera C. Archuleta (17159) (carchuleta@piahoyt.com)
PIA HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT,
## IN AND FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| ADAMS WEALTH ADVISORS, LLC, a Utah limited liability company; and STEVEN CRAIG ADAMS, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> TANNER DANCE, an individual, and RYAN BOHM an individual, and DOES 1-10, <br><br> Defendants. | **COMPLAINT** <br><br> **(Jury Demanded)** <br><br> Case No. _____ <br><br> Judge _____ |

Plaintiffs ADAMS WEALTH ADVISORS, LLC, ("**AWA**") and STEVEN CRAIG

ADAMS ("**Adams**") (collectively, "**Plaintiffs**"), hereby complain against Defendants TANNER

DANCE ("**Dance**") and RYAN BOHM ("**Bohm**") (collectively, "**Defendants**"), and allege as

follows:

## NATURE OF THE CASE

1.      This is a federal question action, pursuant to 18 U.S.C. § 1030, 18 U.S.C. § 2511, 18 U.S.C. § 2701, and 28 U.S.C. § 2201, wherein Plaintiffs are seeking damages, injunctive relief and declaratory relief against Defendants.

2.      Defendant Dance a Certified Financial Analyst (CFA) and charter holder, and Defendant Bohm a Certified Financial Planner (CFP) and Certified Private Wealth Advisor (CPWA), were terminated for cause by AWA when, on information and belief, they committed fraud and other acts of dishonesty.

3.      Bohm and Dance plotted against AWA and Adams to steal the company's (and its employees') private, sensitive, and confidential information for their own use and financial gain.

4.      Indeed, Bohm and Dance hacked into AWA's cloud-based email archiving system, SMARSH, they viewed AWA employee emails without permission and without authorized access, obtained and extracted private, sensitive, and confidential information from SMARSH for their own use and financial gain, and disclosed and used the information they unlawfully obtained to Plaintiffs' detriment, for theirs and their newly formed entity, Core Capital Wealth Management, LLC's ("**CCWM**"), benefit.

5.      In addition to unlawfully obtaining information for his own use and financial gain, Dance destroyed at least 173 files on his company issued computer, hacked AWA's internal servers without permission and authorized access, extracted AWA's private, sensitive, and confidential information, and ran two wiping tools, CCleaner and Eraser, 20 times to erase important files from an AWA company computer.

6.     In addition to obtaining information for his own use and financial gain, Bohm wrongfully encrypted the hard drive on his company issued computer, to which AWA cannot decode the encryption key and fully access it for AWA's use in running its business.

7.      As a result of their illicit and nefarious actions, Bohm and Dance have caused AWA and Adams to suffer substantial damages and losses, in an amount to be determined at trial, but in no event less than $100,000.00.

## PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff Adams Wealth Advisors ("**AWA**") is a Utah limited liability company with its principal place of business located in Cache County, Utah.

9.     Plaintiff Steven Craig Adams ("**Adams**") is an individual residing in Cache County, Utah.

10.     Upon information and belief, Defendant Tanner Dance ("**Dance**") is an individual residing in Cache County, Utah.

11.     Upon information and belief, Defendant Ryan Bohm ("**Bohm**") is an individual residing in Cache County, Utah.

12.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C § 1331 as this action presents federal questions invoking 18 U.S.C. § 1030, 18 U.S.C. § 2511, 18 U.S.C. § 2701, and 28 U.S.C. § 2201.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as all parties reside within this judicial district, and the underlying facts and causes of action as alleged herein, arose in this judicial district.

## FACTUAL BACKGROUND

14.     AWA provides comprehensive financial planning services to clients, including portfolio management, retirement planning, insurance planning, estate planning, investment analysis, alternative investments, financial planning, comprehensive fee based financial planning, asset management, fee and commission based asset management/investment planning, tax strategies, legacy planning, charitable giving planning, long term care insurance, education planning/529 plans, stock option planning, deferred compensation planning, and corporate retirement plans and employee benefits.

### *AWA Employs Dance and Bohm*

15.     Defendant Bohm is a Certified Financial Planner (CFP) and Certified Private Wealth Advisor (CPWA), who at one time was an employee of AWA.

16.     AWA hired Bohm in or about January 2014 as a Financial Planning Specialist.

17.     On or about January 15, 2015, Bohm signed an initial Employment, Confidentiality, and Non-Competition Agreement with AWA.

18.     On or about January 1, 2017, AWA promoted Bohm to the position of Senior Financial Advisor and Director of Business Development. Bohm was responsible for new business acquisition, as well as continued financial planning for existing clients.

19.     On or about January 1, 2017, Bohm entered into an Amended and Restated Employment, Confidentiality, and Non-Competition Agreement (the "**2017 Employment Agreement**"). Bohm's 2017 Employment Agreement is attached hereto as **Exhibit A**.

4

20.     As detailed more fully in the 2017 Employment Agreement, Bohm was guaranteed an annualized base salary from AWA in the amount of $156,000, with quarterly salary increases based on revenue.

21.     The 2017 Employment Agreement also provided for variable compensation to Bohm in the form of performance-based bonuses and incentives.

22.     In 2019, Bohm earned approximately $400,000 in salary alone.

23.     Defendant Dance is a Certified Financial Analyst (CFA) charter holder.

24.     AWA hired Dance in or about March 2014 as an intern.

25.     On or about January 15, 2015, Dance signed an initial Employment, Confidentiality, and Non-Competition Agreement with AWA.

26.     In or about July 2017, AWA promoted Dance to the position of Director of Research and Trading. Dance was also promoted to as the head of Adams Investment Management ("**AIM**").

27.     On or about January 1, 2017, Dance entered into an Amended and Restated Employment, Confidentiality, and Non-Competition Agreement (the "**2017 Employment Agreement**"). Dance's 2017 Employment Agreement is attached hereto as **Exhibit B**.

28.     As detailed more fully in the 2017 Employment Agreement, Dance was guaranteed an annualized base salary from AWA in the amount of $80,000.

29.     The 2017 Employment Agreement also provided for variable compensation to Dance in the form of performance-based bonuses and incentives.

30.     In 2019, Dance earned approximately $230,000 in salary alone.

### *Dance's and Bohm's Internal Hacking of AWA's and Adams' Emails*

31.     Upon information and belief, in or about July 2019, Bohm and Dance began plotting the demise of Adams and AWA.

32.     This plotting included a plan to hack AWA's cloud-based email archiving system, SMARSH, without permission and without authorized access to sift through AWA's employee emails and obtain information that they could use against AWA and Adams for their own financial gain.

33.     SMARSH provides a cloud-based email archiving system which is used by AWA to capture, store, and monitor AWA's electronic communications and manage electronic communications compliance with regulatory authorities, such as with the Securities and Exchange Commission ("**SEC**").

34.     Bohm did not have administrative permissions nor company authorization to search SMARSH and review AWA's employee emails.

35.     Dance did not have administrative permissions nor company authorization to search SMARSH and review AWA's employee emails.

36.     Dylan Nielson ("**Nielson**"), in his capacity as AWA's Chief Compliance Officer, has the proper administrative authorization/permissions to search SMARSH and review AWA's employee emails for compliance reasons. Bohm and Dance knew that Nielson, as AWA's Chief Compliance Officer, had the proper administrative authorization/permissions to search and review AWA's employee emails.

37.     Because of their inability to access SMARSH to search and review AWA employee emails, in or about November 2019, Bohm and Dance commanded Nielson to provide them with

his log-in credentials to SMARSH so that they could search and review AWA's employee emails, because they did not have authorized access to view such emails through their own SMARSH log-in credentials.

38.    Upon information and belief, the main target of Bohm's and Dance's internal hacking was Adams, and their main intent was to gather information and documentation that they could use for their own financial gain in their new business venture, CCWM.

39.    Upon information and belief, during the week of November 11-15, 2019, and without authorization from AWA, Dance and Bohm searched through and reviewed AWA's employee emails using Nielson's SMARSH log-in credentials without authorization from AWA or Adams.

40.    Upon information and belief, Bohm obtained private, sensitive, and confidential information from his unauthorized searches of SMARSH, he placed the information he obtained on a google drive in the cloud entitled "Em Tres Confiamos," and communicated the contents of the information he obtained to Dance all for use in their new business venture, CCWM.

41.    Upon information and belief, Dance obtained private, sensitive, and confidential information from his unauthorized searches of SMARSH, placed the information he obtained on a google drive in the cloud entitled "Em Tres Confiamos," and communicated the contents of the information he obtained to Bohm.

42.    Upon information and belief, during the week of November 11-15, 2019, and without authorization from AWA, Dance commanded Nielson, to setup a login for him on SMARSH because only one person could be logged into Nielson's account at the same time to hack SMARSH and run searches and review employee emails.

7

43.     Nielson, at the direction of his superiors Bohm and Dance, created log-in credentials for Dance so that he could search and review employee emails in SMARSH, without authorization from AWA or Adams.

44.     Bohm and Dance continued to search SMARSH, using Dance's newly created (and unauthorized) log-in credentials, to search and review AWA's employee emails through, at least, the end of November 2019.

45.     On or about December 2, 2019, Nielson disabled Dance's access to SMARSH so that he and Bohm could no longer review AWA's employee emails, obtain information, import that information/documentation to their google drive, entitled "Em Tres Confiamos," and disclose the contents of such information.

46.     On or about December 3, 2019, Dance attempted to hack into SMARSH using Nielson's log-in credentials.

47.     Nielson confronted Dance about this, and Dance admitted that he attempted hack into SMARSH using Nielson's log-in credentials.

48.     In addition to searching SMARSH and reviewing AWA's employee emails, Bohm's and Dance's plotting also included the changing the file retention settings on AWA's internal communications application, Slack, even though it's AWA's policy is to retain chat and document history as long as possible.

49.     On or about November 13, 2019, Dance informed Nielson that he was going to have Jon Dursteler, a Financial Planning Associate, upgrade Slack to the paid version, without authorization from AWA.

50.    Dance wanted and used the premium version so that he could impermissibly examine older messages.

51.    On or about November 13, 2019, Dance sent a message to Bohm and Nielson, that stated:

> Alright I got Jon to upgrade Slack. 2 things:
>
> 1. Allows us to back on all messages. I searched for jobs. Read a slack that Ryan [Bohm] put in the partner slack about them changing loan documents and dates for the sketchy illegal loan. These are big benefits as I had forgotten that. The NAS could be a resource if we have record of those files.
>
> 2. We can determine how long these messages are stored. So let's all spend time the next couple days going over slacks and gather dirt. When we have scoured it , [sic] I'll set it to auto delete after one month. After that point do not talk about anything damning in slack.
>
> Thank you for playing.

52.    On or about January 27, 2020, "Nathan," an employee of Slack, confirmed to Nielson that after investigating things on the backend of the Slack application, he was able to confirm that Dance had made changes to AWA's workspace file retention settings on December 11, 2019, by switching "keep all files" to keep files for only 120 days.

***Bohm and Dance's Termination and Their Post-Termination Illicit and Nefarious Actions***

53.    On or about December 2019, AWA became aware of Bohm's and Dance's dishonest, illicit, and nefarious actions in plotting the demise of AWA and Adams, for activities in addition to their hacking.

54.    On December 20, 2019, AWA terminated Bohm and Dance for material violations of their respective Employment Agreements. *See* Dec. 20, 2019 Termination of Ryan Bohm,

attached hereto as **Exhibit C**; Dec. 20, 2019 Termination of Tanner Dance, attached hereto as **Exhibit D**.

55.    The termination letters informed Bohm and Dance that they needed to return their company issued computers the next day, December 21, 2019 between 7:30 am and 9:30 am.

56.    Along with their termination letters, AWA sent document retention notices to Bohm and Dance. *See* Dec. 20, 2019 Document Retention Notice (Bohm), attached hereto as **Exhibit E**; Dec. 20, 2019 Document Retention Notice (Dance), attached hereto as **Exhibit F**.

57.    Pursuant to these document retention notices, Bohm and Dance were required to preserve all related information, files, and records, that was stored on their company issued computers and other media and devices. Further, Defendants were required to immediately initiate a litigation hold, and suspend destruction of documents, files, records, and information.

58.    Bohm received his termination letter, as well as the document retention notice on December 20, 2019, at 9:09 am. *See* Email to Bohm, attached hereto as **Exhibit G**.

59.    Dance received his termination letter, as well as the document retention notice on December 20, 2019, at 9:10 am. *See* Email to Dance, attached hereto as **Exhibit H**.

60.    However, despite their termination letters and document preservation notices, Bohm and Dance's illicit and nefarious actions continued, including hacking and destruction of files.

61.    After the termination of Bohm and Dance, AWA hired a forensic consultant to conduct an investigation and determine the extent of AWA and Adams' damages and losses that resulted from the actions of Bohm and Dance.

62.    During this forensic investigation, it was discovered that after his termination, Dance ran two computer software programs, CCleaner and Eraser, without permission and in direct violation of company policies and his Document Retention Notice, on his company issued computer. Both of these software programs are designed to remove files, clean computer history, and wipe content.

63.    During the forensic investigation, it was discovered that Dance destroyed at least 173 files from his company issued computer after he was terminated from AWA.

64.    After AWA's forensic consultant was able to recover 45 Microsoft Office documents that were deleted, it was confirmed by AWA personnel that the following items deleted (and subsequently recovered) contained AWA's private, sensitive, and confidential information: Client confidential information, TD Ameritrade client information, Tanner Dance AWA Loan Payment Schedule, typed notes plotting damage to AWA for Dance's personal financial gain, Watterson Debt for AWA loan, and Tanner Dance Credit Q3 charges.

65.    During the forensic investigation, it was also discovered that after his termination, Dance accessed AWA's various cloud-based storage spaces without authorized access, including but not limited to Google Drive, Dropbox, and One Drive, and extracted AWA's private, sensitive, and confidential information.

66.    During the forensic investigation, it was also discovered that after his termination, Dance accessed AWA's Microsoft OneNote at least 9 times in a seven-hour time frame, extracted 11 notebooks, imported the extracted proprietary information to the google drive entitled "Em Tres Confiamos," and deleted the notebooks from his company issued computer.

67.     AWA's forensic consultant was able to recover some of the information Dance extracted and then deleted, and it was confirmed by AWA personnel, that the notebooks Dance extracted and then deleted on or about December 21, 2019, contained AWA's sensitive and proprietary information.

68.     During the forensic investigation, it was also discovered that after his termination, Dance accessed the "TDWellington," the "Adams Shared," and the "Adams Shared/AIM/AIM Multi Strategy" folders on AWA's internal server systems, obtained information/documentation from these folders, and imported the obtained information on the Google Drive entitled "Em Tres Confiamos."

69.     These folders contain proprietary information, client information, portfolio and portfolio management, performance metrics, and other business-related information.

70.     During the forensic investigation, it was also discovered that after his termination, Dance uninstalled, deleted, and/or reset six relevant applications, including Dropbox, TradeStation, Tor Browser, and Slack, thereby destroying the data that those applications contained.

71.     During the forensic investigation, it was discovered that after his termination, Bohm encrypted the hard drive on his company issued computer prior to returning it.

72.     Despite several attempts to decode the encryption key created by Bohm on or about December 21, 2019, Plaintiffs have been unable to unencrypt the encryption key. As such, AWA has not been able to access the contents of the hard drive on Bohm's company issued computer to conduct a forensic investigation of its contents.

73.     Upon information and belief, on or about June 5, 2020, Bohm accessed AWA's Trello account, which is a database that AWA uses to manage its client information.

74.     Upon information and belief, Bohm obtained AWA's client information from his unauthorized access of Trello on June 5, 2020.

75.     To determine the extent of Bohm's and Dance's illicit and nefarious actions, AWA and Adams were forced to hire a forensic consultant to examine/investigate the contents of Bohm's and Dance's company issued computers. This has caused AWA and Adams to incur at least $100,000.00 in losses.

76.     Adams and AWA have had to incur substantial damages, in an amount to be determined at trial, for having to bring this civil action to enforce the provisions of the applicable statutory authorities as alleged herein.

77.     As such, AWA and Adams have been damaged in an amount that exceeds $5,000 in the aggregate, for Bohm's and Dance's unauthorized, illicit, and nefarious actions as alleged herein, including hacking, and Plaintiffs are entitled to relief as described below in the Prayer for Relief.

## FIRST CAUSE OF ACTION
### Violation of 18 U.S.C. § 1030(a)(2)(C) – As Against All Defendants

78.     Plaintiffs hereby incorporate by reference the allegations set forth above as if fully set forth herein.

79.     18 U.S.C. § 1030(a)(2)(C) provides that "[w]hoever—(2) intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains— (C) information from a protected computer" has violated this section. 18 U.S.C. §1030(a)(2)(C).

80. Additionally, "[a]ny person who suffers damage or loss by reason of [18 U.S.C. § 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

81. Plaintiffs are aggrieved persons as defined by 18 U.S.C. § 1030(e)(12).

82. Bohm and Dance's company issued computers are "protected computers" as defined by 18 U.S.C. § 1030(e)(2).

83. Defendants' company issued computers were connected to the internet when they undertook the actions as alleged.

84. Defendants accessed various cloud-based systems on their company issued computers when they undertook the actions as alleged.

85. Upon information and belief, Bohm intentionally used his company issued computer to access SMARSH and search AWA's employee emails throughout November 2019.

86. Bohm did not have authorized access to search SMARSH and review AWA's employee emails.

87. Bohm was not able, through proper means, to search SMARSH using his own company issued credentials because he did not have the proper administrative permissions to do so.

88. Bohm intentionally obtained information from a protected computer, as defined by 18 U.S.C. § 1030(e)(2), as a result of his unauthorized searches of SMARSH and review of AWA's employee emails.

89. Upon information and belief, Dance intentionally used his company issued computer to access SMARSH to search AWA's employee emails throughout November 2019.

14

90.     Dance did not have authorized access to search SMARSH and review AWA's employee emails.

91.     Dance was not able, through proper means, to search SMARSH using his own company issued credentials because he did not have the proper administrative permissions to do so.

92.     Dance intentionally obtained information from a protected computer, as defined by 18 U.S.C. § 1030(e)(2), as a result of his unauthorized searches of SMARSH and review of AWA's employee emails.

93.     After his termination, Dance intentionally accessed AWA's Microsoft OneNote at least 9 times in a seven-hour time frame using his company issued computer, he extracted 11 notebooks, he imported the extracted notebooks/information to the google drive entitled "Em Tres Confiamos," and he deleted the notebooks from his company issued computer.

94.     After his termination, Dance also intentionally accessed the "TDWellington," the "Adams Shared," and the "Adams Shared/AIM/AIM Multi Strategy" folders on AWA's internal server systems, obtained information/documentation from these folders, and imported the obtained information on the Google Drive entitled "Em Tres Confiamos."

95.     Upon information and belief, on or about June 5, 2020, Bohm intentionally accessed AWA's Trello account, which is a database that AWA uses to manage its client information.

96.     Upon information and belief, Bohm intentionally obtained AWA's client information from Trello on June 5, 2020.

97.     Plaintiffs have been damaged, as defined by 18 U.S.C. § 1030(e)(8) as a result of Bohm's and Dance's knowing and intentional actions. Dance deleted at least 173 files from his company issued computer, and Plaintiffs have been unable to access the data/information on Bohm's company issued computer as a result of his encryption of the computer's hard drive.

98.     Plaintiffs have suffered losses, as defined by 18 U.S.C. § 1030(e)(11), during a one-year period aggregating to at least $5,000 in value. Plaintiffs have had to expend resources, in an amount to be determined at trial, but not less than $100,000.00, to respond to Defendants' nefarious and illicit actions, to conduct a damage assessment, to restore the data or information that was destroyed by Bohm and Dance, and to bring this instant action to enforce the provisions of 18 U.S.C. § 1030.

99.     Therefore, Plaintiffs are entitled judgment against Bohm and Dance as described below in the Prayer for Relief.

### SECOND CAUSE OF ACTION
### Violation of 18 U.S.C. § 1030(a)(5) – As Against All Defendants

100.    Plaintiffs hereby incorporate by reference the allegations set forth above as if fully set forth herein.

101.    18 U.S.C. § 1030(a)(5) provides that "[w]hoever—(5)(A) knowingly causes the transmission of a program, information, code, or command and the result of such conduct, intentionally causes damages without authorization to a protected computer; (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damages; or (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss" has violated this section. 18 U.S.C. § 1030(a)(5).

102.     Additionally, "[a]ny person who suffers damage or loss by reason of [18 U.S.C. § 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

103.     Plaintiffs are aggrieved persons as defined by 18 U.S.C. § 1030(e)(12).

104.     Furthermore, Bohm's and Dance's company issued computers are "protected computers" as defined by 18 U.S.C. § 1030(e)(2).

105.     Defendants' company issued computers were connected to the internet when they undertook the actions as alleged.

106.     Defendants accessed various cloud-based systems on their company issued computers when they undertook the actions as alleged.

107.     Dance, after his termination on or about December 21, 2019, knowingly and intentionally accessed his company issued computer and ran two computer software programs, CCleaner and Eraser, on his company issued computer to remove files, clean computer history, and wipe content.

108.     Dance knowingly and intentionally accessed his company issued computer and destroyed at least 173 files from the computer.

109.     After his termination Dance knowingly and intentionally accessed various cloud-based storage spaces from his company issued computer, including but not limited to Google Drive, Dropbox, and One Drive, and extracted AWA's private, sensitive, and confidential information.

110.     Dance knowingly and intentionally used his company issued computer to access AWA's Microsoft OneNote at least 9 times in a seven-hour time frame, extracted 11 notebooks,

imported the extracted notebooks/information to the google drive entitled "Em Tres Confiamos," and deleted the notebooks from his company issued computer.

111.   After his termination, Dance knowingly and intentionally used his company issued computer to access the "TDWellington," the "Adams Shared," and the "Adams Shared/AIM/AIM Multi Strategy" folders on AWA's internal server systems, obtained information/documentation from these folders, and imported the obtained information on the Google Drive entitled "Em Tres Confiamos."

112.   These folders contain proprietary information, client information, portfolio and portfolio management, performance metrics, and other business-related information.

113.   After his termination, Dance knowingly and intentionally used his company issued computer and uninstalled, deleted, and/or reset at least 6 relevant applications, including Dropbox, TradeStation, Tor Browser, and Slack, thereby destroying the data that those applications contained.

114.   After Bohm was terminated from AWA, he knowingly and intentionally accessed his company issued computer and encrypted the computer's hard drive.

115.   Despite several attempts to decode the encryption key coded by Bohm on or about December 21, 2019, Plaintiffs have been unable to unecrypt the encryption key. As such, Plaintiffs have not been able to access the contents of the hard drive on the computer to conduct a forensic investigation of its contents.

116.   Bohm and Dance knowingly and intentionally caused Plaintiffs to sustain damages and losses as alleged herein.

117.   Bohm and Dance recklessly caused Plaintiffs to sustain damages and losses as alleged herein.

118.   Plaintiffs have been damaged, as defined by 18 U.S.C. § 1030(e)(8) as a result of Bohm's and Dance's knowing and intentional actions. Dance deleted at least 173 files from his company issued computer, and Plaintiffs have been unable to access the data/information on Bohm's company issued computer as a result of his encryption of the computer's hard drive.

119.   Plaintiffs have suffered losses, as defined by 18 U.S.C. § 1030(e)(11), during a one-year period aggregating of at least $5,000 in value. Plaintiffs have had to expend resources, in an amount to be determined at trial, but not less than $100,000.00, to respond to Defendants' nefarious and illicit actions, including unlawful hacking, to conduct a damage assessment, to restore the data or information that was destroyed by Bohm and Dance, and to bring this instant action to enforce the provisions of 18 U.S.C. § 1030.

120.   Therefore, Plaintiffs are entitled judgment against Bohm and Dance as described below in the Prayer for Relief.

**THIRD CAUSE OF ACTION**
**Violation of 18 U.S.C. § 1030(a)(4) – As Against All Defendants**

121.   Plaintiffs hereby incorporate by reference the allegations set forth above as if fully set forth herein.

122.   18 U.S.C. § 1030(a)(5) provides that "[w]hoever—(4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value" has violated this section. 18 U.S.C. § 1030(a)(4).

123.     Additionally, "[a]ny person who suffers damage or loss by reason of [18 U.S.C. § 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

124.     Plaintiffs are aggrieved persons as defined by 18 U.S.C. § 1030(e)(12).

125.     Bohm and Dance's company issued computers are "protected computers" as defined by 18 U.S.C. § 1030(e)(2). Defendants' company issued computers were connected to the internet and Defendants accessed various cloud-based systems when they undertook the actions as alleged.

126.     Upon information and belief, Bohm knowingly and with an intent to defraud used his company issued computer to access SMARSH to search AWA's employee emails throughout November 2019.

127.     Bohm did not have authorized access to search SMARSH and review employee emails. In fact, Bohm was not able to search SMARSH using his company issued credentials because he did not have the proper administrative permissions to do so.

128.     Upon information and belief, Bohm knowingly and with an intent to defraud obtained information from a protected computer, as defined by 18 U.S.C. § 1030(e)(2), as a result of his unauthorized searches of SMARSH and review of AWA's employee emails.

129.     Upon information and belief, Dance knowingly and with an intent to defraud used his company issued computer to access SMARSH to search AWA's employee emails throughout November 2019.

130.    Dance did not have authorized access to search SMARSH and review AWA's employee emails. In fact, Dance was not able to search SMARSH using his company issued credentials because he did not have the proper administrative permissions to do so.

131.    Dance knowingly and with an intent to defraud obtained information from a protected computer, as defined by 18 U.S.C. § 1030(e)(2), as a result of his unauthorized searches of SMARSH and review of AWA's employee emails.

132.    After his termination, Dance knowingly and with an intent to defraud accessed AWA's Microsoft OneNote at least 9 times in a seven-hour time frame using his company issued computer, extracted 11 notebooks, imported the extracted notebooks/information to the google drive entitled "Em Tres Confiamos," and deleted the notebooks from his company issued computer.

133.    After his termination, Dance knowingly and with an intent to defraud accessed the "TDWellington," the "Adams Shared," and the "Adams Shared/AIM/AIM Multi Strategy" folders on AWA's internal server systems, obtained information/documentation from these folders, and imported the obtained information on the Google Drive entitled "Em Tres Confiamos."

134.    Upon information and belief, on or about June 5, 2020, Bohm, knowingly and with an intent to defraud accessed AWA's Trello account, which is a database that AWA uses to manage its client information.

135.    Upon information and belief, Bohm knowingly and with an intent to defraud obtained AWA's client information from Trello on June 5, 2020.

136.    Plaintiffs have been damaged, as defined by 18 U.S.C. § 1030(e)(8) as a result of Bohm's and Dance's nefarious and illicit actions. Dance deleted at least 173 files from his

company issued computer, and Plaintiffs have been unable to access the data/information on Bohm's company issued computer as a result of his encryption of the computer's hard drive.

137. Plaintiffs have suffered losses, as defined by 18 U.S.C. § 1030(e)(11), during a one-year period aggregating of at least $5,000 in value. Plaintiffs have had to expend resources, in an amount to be determined at trial, but not less than $100,000.00, to respond to Defendants' nefarious and illicit actions, including hacking, to conduct a damage assessment, to restore the data or information that was destroyed by Bohm and Dance, and to bring this instant action to enforce the provisions of 18 U.S.C. § 1030.

138. Therefore, Plaintiffs are entitled judgment against Bohm and Dance as described below in the Prayer for Relief.

## FOURTH CAUSE OF ACTION
### Violation of 18 U.S.C. § 1030(b) – As Against All Defendants

139. Plaintiffs hereby incorporate by reference the allegations set forth above as if fully set forth herein.

140. 18 U.S.C. § 1030(a)(5) provides that "[w]hoever conspires to commit or attempts to commit an offense under ]10 U.S.C. § 1030(a)]" has violated this section. 18 U.S.C. § 1030(b).

141. Additionally, "[a]ny person who suffers damage or loss by reason of [18 U.S.C. § 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

142. Plaintiffs are aggrieved persons as defined by 18 U.S.C. § 1030(e)(12).

143. Bohm and Dance's company issued computers are "protected computers" as defined by 18 U.S.C. § 1030(e)(2). Defendants' company issued computers were connected to the internet and Defendants accessed cloud-based systems when they undertook the actions as alleged.

144.    Bohm and Dance conspired together to intentionally use their company issued computer to access SMARSH and search AWA's employee emails throughout November 2019.

145.    Bohm and Dance conspired together change the file retention settings, and to thereby delete/destroy chat and document history, on Slack.

146.    Bohm conspired with Dance to encrypt the hard drive on his company issued computer so that Plaintiffs could not track his illicit and nefarious actions.

147.    Dance conspired with Bohm to run wiping tools on his company issues computer, to delete files and browser history, to access AWA's private, sensitive, and confidential information without authorization (and post-termination), and to extract (then delete) AWA's private, sensitive, and confidential information.

148.    Bohm conspired with Dance to access AWA's Trello account on June 5, 2020 (more than 6 months after their termination from AWA) to obtain the company's confidential client information.

149.    Plaintiffs have been damaged, as defined by 18 U.S.C. § 1030(e)(8) as a result of Bohm's and Dance's nefarious and illicit actions. Dance deleted at least 173 files from his company issued computer, and Plaintiffs have been unable to access the data/information on Bohm's company issued computer as a result of his encryption of the computer's hard drive.

150.    Plaintiffs have suffered losses, as defined by 18 U.S.C. § 1030(e)(11), during a one-year period aggregating of at least $5,000 in value. Plaintiffs have had to expend resources, in an amount to be determined at trial, but not less than $100,000.00, to respond to Defendants' nefarious and illicit actions, including hacking, to conduct a damage assessment, to restore the data or

information that was destroyed by Bohm and Dance, and to bring this instant action to enforce the provisions of 18 U.S.C. § 1030.

151.    Therefore, Plaintiffs are entitled judgment against Bohm and Dance as described below in the Prayer for Relief.

**FIFTH CAUSE OF ACTION**
**Violation of 18 U.S.C. § 2511(1) – As Against All Defendants**

152.    Plaintiffs hereby incorporate by reference the allegations set forth above as if fully set forth herein.

153.    18 U.S.C. § 2511(1) provides that "any person who – (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept, any wire, oral, or electronic communication;  … (c) intentionally discloses, or endeavors to disclose, to any person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication" has violated this section. 18 U.S.C. § 2511.

154.    Furthermore, "any person whose wire, oral, or electronic communication is intercepted, discloses or intentionally used in violation of this chapter may in a civil action recover from the person or entity … which engaged in that violation" and may seek  "(1) such preliminary or other equitable relief or declaratory relief as may be appropriate; damages under [18 U.S.C. § 2520(c)] and punitive damages in appropriate cases; and (3) a reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2520.

155.    AWA and Adams are "aggrieved persons" as defined in 18 U.S.C. § 2510(11).

156.    Bohm intercepted Adams' and AWA's electronic communications, as defined in 18 U.S.C. § 2510(2), 18 U.S.C. § 2510(12).

157.    Bohm acquired the contents of AWA's and Adams' electronic communications contained on SMARSH, a cloud-based email archiving system, through the use of his company issued computer.

158.    Dance intercepted Adams' and AWA's electronic communications, as defined in 18 U.S.C. § 2510(2), 18 U.S.C. § 2510(12).

159.    Dance acquired the contents of AWA's and Adams' electronic communications contained on SMARSH, a cloud-based email archiving system, through the use of his company issued computer.

160.    Upon information and belief, Bohm intentionally obtained private, sensitive, and confidential information from his unauthorized searches of SMARSH, he intentionally imported and disclosed the information he obtained to a google drive entitled "Em Tres Confiamos," and intentionally communicated and disclosed the contents of the information he obtained to Dance.

161.    Upon information and belief, Dance intentionally obtained private, sensitive, and confidential information from his unauthorized searches of SMARSH, he intentionally imported and disclosed the information he obtained to a google drive entitled "Em Tres Confiamos," and intentionally communicated and disclosed the contents of the information he obtained to Bohm.

162.    As a result of Defendants' actions, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $100,000.00.

163.     Additionally, Plaintiffs are (at least) entitled to statutory damages of $10,000.00 or $100 per day for each day of violations, whichever is greater. *See* 18 U.S.C. § 2520(c)(2).

164.     Plaintiffs are entitled punitive damages, and the attorneys' fees and costs they have incurred (an continue to incur) in having to bring this instant action.

165.     In addition, Plaintiffs are entitled to injunctive relief.

166.     Therefore, Plaintiffs are entitled judgment against Bohm and Dance as described below in the Prayer for Relief.

### SIXTH CAUSE OF ACTION
### Violation of 18 U.S.C. § 2701(a) – As All Defendants

167.     Plaintiffs hereby incorporate by reference the allegations set forth above as if fully set forth herein.

168.     18 U.S.C. § 2701(a) provides that "[w]hoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system" has violated this section. 18 U.S.C. § 2701(a).

169.     Furthermore, any "person aggrieved by any violation … in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity … which engaged in such violations that such relief as may be appropriate" and may seek ""(1) such preliminary or other equitable relief or declaratory relief as may be appropriate; damages under[18 U.S.C. § 2520(c)] and punitive damages in appropriate cases; and (3) a reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2707.

26

170.     Plaintiffs are "aggrieved persons" as denied by 18 U.S.C. § 2707.

171.     SMARSH is a facility as defined in 18 U.S.C. § 2701(a).

172.     SMARSH is a cloud-based email archiving suystem which captures, stores, and monitors Plaintiffs' electronic communications.

173.     Bohm intentionally accessed SMARSH to search Adams' and AWA's electronic communications, as defined in 18 U.S.C. § 2510(2), 18 U.S.C. § 2510(12).

174.     Upon information and belief, Bohm intentionally obtained private, sensitive, and confidential information from his unauthorized searches of SMARSH, he intentionally imported and disclosed the information he obtained to a google drive entitled "Em Tres Confiamos," and he intentionally communicated and disclosed the contents of the information he obtained to Dance.

175.     Upon information and belief, Dance intentionally obtained private, sensitive, and confidential information from his unauthorized searches of SMARSH, he intentionally imported and disclosed the information he obtained to a google drive entitled "Em Tres Confiamos," and he intentionally communicated and disclosed the contents of the information he obtained to Bohm.

176.     Dance intentionally accessed SMARSH to search Adams' and AWA's electronic communications, as defined in 18 U.S.C. § 2510(2), 18 U.S.C. § 2510(12).

177.     As a result of Defendants' actions, Plaintiffs have been damaged, in an amount to be determined at trial, but in no event less than $100,000.00.

178.     Additionally, Plaintiffs are (at least) entitled to statutory damages no less than the "sum of $1,000." 18 U.S.C. § 2707(c).

179.    Plaintiffs are entitled to recover the sum of their actual damages, any profits made by Defendants a result of their violation of 18 U.S.C. § 2701, punitive damages, and attorneys' fees and costs they have incurred (an continue to incur) in having to bring this instant action.

180.    In addition, Plaintiffs are entitled to injunctive relief.

181.    Therefore, Plaintiffs are entitled judgment against Bohm and Dance as described below in the Prayer for Relief.

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment (28 U.S.C. § 2201(a)) – As Against All Defendants**

182.    Plaintiffs hereby incorporate by reference the allegations set forth above as if fully set forth herein.

183.    Pursuant to 28 U.S.C. § 2201(a), AWA and Adams are entitled to declaratory judgment, including without limitation a declaration as follows:

    a.    That Bohm and Dance violated 18 U.S.C. § 1030(a)(2)(C);

    b.    That Bohm and Dance violated 18 U.S.C. § 1030(a)(5);

    c.    That Bohm and Dance violated 18 U.S.C. § 1030(a)(4);

    d.    That Bohm and Dance violated 18 U.S.C. § 1030(b);

    e.    That Bohm and Dance violated 18 U.S.C. § 2511(1); and

    f.    That Bohm and Dance violated 18 U.S.C. § 2701(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    Judgment in Plaintiffs' favor against Defendants on all causes of action alleged herein;

2.     For economic damages, plus interest in amount to be determined at trial, but in no event less than $100,000.00;

3.     For consequential damages plus interest in an amount to be determined at trial;

4.     For all statutory damages provided in 18 U.S.C. § 2520 and 18 U.S.C. § 2701;

5.     For permanent injunctive relief against Defendants;

6.     For judgment that this is an exceptional case;

7.     For restitution;

8.     For punitive damages;

9.     For costs of suit incurred herein;

10.     For pre- and post-judgment interest;

11.     For attorneys' fees and costs;

12.     For an order finding that Bohm and Dance violated 18 U.S.C. § 1030, 18 U.S.C. § 2511, and 18 U.S.C. § 2701;

13.     For joint and several liability by and between all defendants; and

14.     For such other and further relief as the Court may deem to be just and proper.

## **DEMAND FOR JURY**

Plaintiffs hereby demand a trial by jury for the causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

29

RESPECTFULLY SUBMITTED this 25th day of May 2021.


PIA HOYT, LLC

*/s/ Joseph G. Pia*
Joseph G. Pia
John P. Mertens
Scott R. Hoyt
Ciera C. Archuleta

*Attorneys for Plaintiffs*